UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-14392-MARRA

BEYEL BROTHERS, INC.,
Individually, and a/a/o[1] FLORIDA
POWER & LIGHT COMPANY,

    Plaintiffs,
v.

EMH, INC.,

    Defendant.
_____/

## ORDER AND OPINION

THIS CAUSE is before the Court upon Plaintiff, Beyel Brother, Inc's Motion to Strike Defendant's Counterclaim [D.E. 25], and Defendant's Amended Motion for Leave to File a Counterclaim (amended to include attachments) [D.E. 28]. The Court has carefully considered the entire Court file and is otherwise fully advised in the premises.

**Factual Background**

Plaintiffs Beyel Brothers, Inc. ("BB") and Florida Power and Light Company ("FPL") (together "Plaintiffs") allege in their Amended Complaint that FPL and Defendant EMH, INC. ("EMH") entered into a contract on or about November 22, 2016, whereby FPL agreed to pay EMH to design, manufacture and install a custom-built crane atop a structure on FPL's property. Complaint ("Compl.") DE 23, ¶ 7. It is further alleged that on or about November 3, 2016, BB, [as a subcontractor],

---

[1] The Complaint states "On or about June 12, 2018 FP&L entered into an agreement (hereinafter the "FP&L Assignment") with Beyel wherein FP&L assigned its interest to any and all claims against EMH to BEYEL." Compl. ¶ 32, Ex. E.

"provided EMH Proposal # 8121 for the lifting and installation services for [the 65-ton] gantry crane manufactured by EMH for the use of FPL;" Compl. ¶ 8; "that on or about November 11, 2016, EMH entered into an agreement (hereinafter the "<u>EMH Agreement</u>") with [BB] for 'installation services' through a purchase order for Proposal # 8121;" Compl. ¶ 9, <u>Ex. C</u>.[2] (emphasis supplied); that pursuant to the EMH Agreement, EMH was to provide BB "with instructions on how to lift and assemble/position the gantry crane;" Compl. ¶ 10; that on February 27, 2017, installation of the crane began with BB using a mobile lifting vehicle and the necessary rigging equipment to hoist the crane to its designated position for assembly, Compl. ¶ 16; that during the lifting process, however, BB ceased lifting the crane, Compl. ¶ 22; and that the crane was not lowered to the ground but instead remained suspended in the air. *Id*. After approximately two hours and forty-five minutes, the rigging equipment failed, causing the crane to fall. Compl. ¶ 25. BB alleges it "was forced to incur expenses in an amount exceeding $1,575,000 in the performance of . . . additional work, including, but not limited to damage to [FPL's building] and to the gantry crane owned by [FPL]." Compl. ¶¶ 30-31. Plaintiffs seek damages, including but not limited to, the cost of performance of additional work, cost for remediation of damage to FPL's building, and cost for remediation of damage to the gantry crane, together with pre- and post-judgment interest, attorneys' fees, costs. Compl. ¶ 36.

---

[2] Whether Exhibit C is an enforceable "agreement" is an issue in dispute. It is a single page document, with no signatures and no terms.

**Procedural Background**

1. On August 30, 2019, Plaintiffs sued EMH in state court for negligence, breach of oral and written contracts, promissory estoppel, quantum meruit, unjust enrichment, strict liability, professional negligence, contribution, equitable subrogation, common law indemnity, and contractual indemnity [D.E. 1-3].

2. EMH filed its Answer and Affirmative Defenses to the Complaint on October 14, 2019, and removed this matter to this Court [D.E. 1, D.E. 41].

3. A Motion for Extension of Time was granted on December 5, 2019, extending the deadline to amend the pleadings and for joinder of parties until January 13, 2020 [D.E. 14].

4. Three days before the deadline to amend the pleadings, Plaintiffs filed an Amended Complaint on January 10, 2020 [D.E. 23]. EMH timely filed its Answer and Affirmative Defenses to the Amended Complaint on January 24, 2020, and for the first time asserted a compulsory counterclaim [D.E. 24].

5. BB moved to strike EMH's counterclaim because it was asserted 11 days after the January 13, 2020 deadline to amend the pleadings. [D.E. 25, ¶ 12].

6. EMH filed a memorandum in opposition to BB's motion to strike its counterclaim [D.E. 26] and at the same time filed a motion for leave to file a counterclaim out of time. [D.E. 28]. EMH states it seeks to assert a compulsory counterclaim based on, among other things, "three newly discovered Plaintiff proposals" which are more recent than the one on which Plaintiff bases its amended complaint. DE 28 at 4.

**Counterclaim Allegations**

1.      As to this allegation, the parties agree: "On or about November 3, 201[6],[3] Beyel Brothers prepared, and submitted, a draft proposal for approval by EMH. The proposal addressed the services Beyel Brothers would provide to EMH. (See attached Exhibit A).[4]" DE 24 (Answer to Amended Compl.) ¶ 2.

2.      EMH then asserts that it did not accept the November 3, 2016 proposal upon which BB bases its Complaint. EMH maintains the parties engaged in extensive negotiations after BB submitted Proposal #8121 regarding the proposal's content, including the scope of work to be performed by BB. EMH asserts that on or about January 9, 2017, BB submitted a second draft proposal to EMH for its review. D.E. 24, ¶ 3, Ex. B.

3.      According to EMH, it did not accept the second draft proposal and initiated further negotiations regarding its content and the scope of work to be provided by BB. D.E. 24, ¶ 4.

4.      EMH then asserts that, on April 6, 2017, BB submitted a third draft of the proposal. D.E. 24, Ex. C. However, still not satisfied with the proposal's content, EMH purportedly rejected the third proposal and further negotiations ensued. D.E. 24, ¶ 5.

5.      On or about April 19, 2017, BB allegedly submitted a fourth draft proposal to EMH to perform the service of lifting the gantry crane for installation on FPL's property. DE 24, Ex. D. EMH asserts that after some additional negotiation, including

---

[3] The counterclaim states 2018, this is a typo, the actual year is 2016.
[4] Exhibit A to the proposed counterclaim actually attaches Proposal # 8121.

4

making some handwritten modifications to the document, EMH accepted the fourth proposal.  EMH contends this acceptance created the contract between the parties whereby EMH agreed to pay BB to perform the service of lifting the gantry crane for installation on FPL's property. D.E. 24, ¶ 6.

6.  EMH contends these proposals are relevant because they constitute conclusive evidence that BB breached the contract with EMH.  Specifically, EMH asserts the proposals demonstrate that BB bore complete responsibility to install the crane, including the leg.  Thus, EMH asserts BB had complete control over the installation and approval of the lift plans. D.E. 28, p. 4.

**Discussion**

Ordinarily, requests to amend a pleading to assert an omitted counterclaim should be freely granted when justice so requires. *See* Fed. R. Civ. P. 13 Advisory Committee Notes, 2009 Amendment; Rule 15(a)(2).  Paragraph (e) of Rule 13 allows the Court to permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired after an earlier pleading.  Rule 13(e).  In light of Rule 15(a)'s liberal approach to granting leave to amend, the Eleventh Circuit generally requires a substantial reason, such as bad faith, dilatory motive, repeated failure to cure deficiencies through amendment previously allowed, undue prejudice, or futility, to justify denying leave to amend.  *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340-41 (11th Cir. 2014); *Maynard v. Board of Regents*, 342 F.3d 1281, 1287 (11th Cir. 2003).

However, it is clear in this circuit that parties seeking to amend must also comply with scheduling deadlines set forth in the scheduling order established pursuant to Rule 16(b).  *See Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir.

5

1998) ("*Sosa*").  Where, as here, a motion to amend is not filed until after the deadline set forth in the scheduling order, the party must demonstrate good cause under Rule 16(b)(4) before the Court will consider whether the amendment is proper under Rule 15(a).  *Id.*; *see also Ameritox, Ltd. v. Aegis Services Corp.*, No. 07-80498-CIV, 2008 WL 2705435, *2 (S.D. Fla. July 9, 2008) citing *Watkins v. Farmers & Merchant Bank*, 237 F.App'x 591, 593 (11th Cir. 2007); *Anderson v. United Parcel Service, Inc.*, 506 F. Supp. 2d 1215, 1228 (S.D. Fla. 2007); *United Nat'l Ins. Co. v. Owl's Nest of Pensacola Beach, Inc.*, 3:05cv374, 2006 WL 1653380, at *2 (N.D. Fla. 2006).  To consider only Rule 15(a) without regard to the scheduling order created pursuant to Rule 16(b), "would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."  *Sosa*, 133 F.3d at 1419; *see also Millenium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1299 (11th Cir. 2007).

      This good cause standard precludes modification unless the schedule cannot "be met despite the diligence of the party seeking the extension."  Fed. R. Civ. P. 16 advisory committee's notes, cited in *Sosa*, 133 F.3d at 1418; *Romero v. Drummond Co.*, 552 F.3d 1303, 1319 (11th Cir. 2008).  "In other words, good cause exists when evidence supporting the proposed amendment would not have been discovered in the exercise of reasonable diligence until after the amendment deadline had passed."  *Donahay v. Palm Beach Tours & Transp., Inc.*, 243 F.R.D. 697, 699 (S.D. Fla. 2007).  Mere "carelessness is not compatible with a finding of diligence."  *Will-Burn Recording & Pub. Co. v. Universal Music Group Records*, No. 08-0387, 2009 WL 1118944, at *3 (S.D. Ala. 2009) (internal marks omitted).

If either the facts necessary to formulate the claim were known prior to the deadline or the moving party failed to seek the information it needed to determine whether an amendment was required before the deadline passed, the moving party cannot establish the Rule 16(b) diligence necessary to show good cause. *See Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241–42 n.3 (11th Cir. 2009). Moreover, even if the opposing party would not be prejudiced by the modification of a scheduling order, good cause is not shown if the amendment could have been timely made. *See Hayes v. Rule*, No. 1:03CV1196, 2005 WL 2136946, at *4 (M.D.N.C. August 19, 2005).

It has been held that a Court's evaluation of good cause is more stringent than its inquiry into the propriety of amendment under the more liberal Rule 15. *See Sosa*, 133 F.3d at 1418; *see also Forstmann v. Culp*, 114 F.R.D. 83, 85-86 (M.D. N.C.1987). Thus, even if EMH could demonstrate that the amendment is proper under Rule 15, the Court must first determine whether it has shown good cause under Rule 16(b) because its motion was filed after the scheduling order's deadline. *See Sosa*, 133 F.3d at 1419. In other words, the likelihood of obtaining permission to amend diminishes dramatically after the deadline for amendments contained in the scheduling order expires. *Ameritox*, 2008 WL 2705436 at *2.

EMH explains that subsequent to the filing of the amended complaint, it discovered three contract proposals that are more recent than the one on which BB bases its Amended Complaint. They are dated January 9, 2017 (Exhibit 2 to the proposed counterclaim), April 6, 2017 (Exhibit 3 to the proposed Counterclaim), and April 19, 2017 (Exhibit 4 to the proposed Counterclaim). EMH asserts that prior to the

7

cut-off date for amending the pleadings, EMH's employees responsible for locating and obtaining relevant information and documents were unaware of the existence of these three proposals prior to the final agreement. In fact, EMH states that the three earlier proposals were not discovered until it began preparing its answer to Plaintiff's <u>Amended</u> Complaint. EMH claims it

> exercised reasonable diligence in that its employees were contacted, interviewed, and requested to submit any potentially relevant documents. *Only when triggered by further investigation, following the filing of Plaintiff's Amended Complaint*, did the newly discovered evidence come to light. Thus, the failure to locate this evidence did not result from a lack of reasonable diligence.

DE 28 at 6 (emphasis added). This explanation satisfies none of the elements required to show good cause and actually shows a lack thereof.

The evidence upon which counsel relies to support the proposed counterclaim are "three newly discovered Plaintiff proposals" (from a deceased man's computer) and new information imparted by EMH's Service Manager, Joe Piscitello. These proposals and information were in EMH's custody and control from the outset of this litigation. Counsel states he only discovered this information when he began preparing EMH's answer to the <u>Amended Complaint</u>. EMH's employees were requested to search for all relevant documents and obviously failed to do so. Thus, EMH could have discovered this evidence before filing its original answer, and this explanation actually reveals EMH's lack of diligence in assisting its counsel when they were preparing the original answer. In order to obtain the relief it seeks, EMH must show that it could not have discovered the proposals or "all relevant information" in the exercise of reasonable diligence until after January 13, 2020.

8

Furthermore, as EMH's *original* answer amply demonstrates, EMH was well aware at that time of the grounds to assert a counterclaim for breach of contract. For instance, in its Second Affirmative Defense, EMH asserts that "the damages or injuries, if any, of which the Plaintiffs complain are the result of the negligence, breach of contract, or breach of duty by third persons not under the control of this Defendant;" in its Sixth Affirmative Defense, EMH asserts "Plaintiffs' claims are barred or waived, in whole or in part, as the work Plaintiffs contends to be defective was outside the scope of work to be performed by Defendant and/or was in fact performed by others."  In its Eleventh Affirmative Defense EMH asserts, "no cause of action for contractual indemnity or common law indemnity exists because this Defendant had no duties and/or responsibilities under the contract during the applicable time and place of the allegations contained in the Complaint."  DE 41-1.

The discovery of all relevant evidence should have occurred at the time of the original answer, not when EMH began preparing its answer to the amended complaint. Considering the *Sosa* Court's analysis of reasonable diligence, the discovery of additional proposals under the aforementioned circumstances shows a lack of diligence on the part of EHM.  Although EMH claims the proposals would not have been discovered until after the deadline to amend pleadings, this assertion sounds hollow in light of the fact that the proposals and relevant information have always been in EMH's possession.  Having failed to show good cause, an analysis of Fed. R. Civ. P. 15(a)(2) is unnecessary.  Accordingly, it is hereby

ORDERED AND ADJUDGED that Plaintiff, Beyel Brother, Inc's Motion to Strike Defendant's Counterclaim [D.E. 25] is granted, and Defendant's Amended Motion for Leave to File a Counterclaim [D.E. 28] is denied.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida, this 20th day of October, 2020.

KENNETH A. MARRA
United States District Judge